UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KORBIN TYLER LAVERN THOMAS,

        Petitioner,

v.

LEE PARISH,

        Respondent.

_____/

Case No. 1:19-cv-519

Honorable Janet T. Neff

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.  **Factual allegations**

Petitioner Korbin Tyler Lavern Thomas is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Michigan. On September 9, 2015, Petitioner pleaded guilty in the Kalamazoo County Circuit Court to second-degree murder, in violation of Mich. Comp. Laws § 750.317. On October 5, 2015, the court sentenced Petitioner to a prison term of 15 to 50 years.

At Petitioner's plea hearing, he testified that, on January 11, 2015, in Kalamazoo County, he came into contact with Jazmyne Gibson; shortly thereafter, he caused her death; and, he caused her death by shooting her. (Plea Hr'g Tr., ECF No. 5, PageID.112.) Petitioner acknowledged that when he shot Ms. Gibson he knowingly created a very high risk of death or great bodily harm by pointing a gun at her that "turned out to be loaded" and pulling the trigger. (Plea Hr'g Tr., ECF No. 1-2, PageID.35.) At Petitioner's sentencing hearing, his counsel posited that Petitioner was teasing and toying when he pointed the rifle at his girlfriend and pulled the trigger negligently, or perhaps recklessly, unaware that there was a bullet in the chamber. (Sentencing Hr'g, ECF No. 1-3, PageID.62.)

Before taking Petitioner's plea, the trial court reviewed the terms of the plea bargain:

> [THE PROSECUTOR] MR. WILLIAMS: Your Honor, it's my understanding we have a resolution to this matter.
>
> THE COURT: All right. What would it be?
>
> MR. WILLIAMS: I've advised [defendant's counsel] Mr. Sappanos that if Mr. Thomas pleads guilty to the included offense in count one of second degree murder the People would dismiss count two, felony firearm and we have come to a sentencing agreement that the Court will have discretion to sentence the Defendant between 8 and 15 years.

>THE COURT: At the minimum of the—at the minimum?
>
>MR. WILLIAMS: The Court—the Court can choose a sentence anywhere between 8 and 15 years Your Honor. That's—we calculate that to be between the guidelines of manslaughter and second degree murder so we would have a sentencing agreement of a sentence of no less than 8 years, no more than 15 years, we'll leave it to Your Honor's discretion to fashion appropriate sentence between those numbers.
>
>THE COURT: And there is no agreement on what the maximum would be?
>
>MR. WILLIAMS: That's correct, Your Honor.
>
>THE COURT: All right. And this is a *Killebrew* agreement and if I decided to go outside of that, Mr. Sappanos and his client would have absolute right to withdraw, is that your understanding?
>
>MR . WILLIAMS: That is correct; it is a *Killebrew* Your Honor.
>
>THE COURT: Mr. Sappanos, is this your agreement?
>
>MR. SAPPANOS: It is, Your Honor.
>
>THE COURT: Most importantly, Mr. Thomas, is this your understanding?
>
>MR. THOMAS: Yes, Your Honor.
>
>THE COURT: Has anyone promised you anything else or threatened you to make you plead?
>
>MR. THOMAS: No, Your Honor.
>
>THE COURT: Is it your own free choice?
>
>MR. THOMAS: Yes.

(Plea Hr'g Tr., ECF No. 1-2, PageID.31-32.) After Petitioner provided the factual basis for his plea, the court asked counsel: "Are either of you aware of promises, threats or inducements that have not been disclosed in open Court on the record today?" (*Id.*, PageID.35.) Both counsel indicated there were not. (*Id.*)

At Petitioner's sentencing hearing, the trial court calculated Petitioner's minimum sentence range under the guidelines to be 12 to 20 years. (Sentencing Hr'g Tr., ECF No. 5,

3

PageID.113.)  The court heard comment from three relatives of the victim.  The victim's grandmother asked the court to impose the maximum sentence.  (Sentencing Hr'g Tr., ECF No. 1-3, PageID.47-48.)  Thereafter, the prosecutor argued:

> We do have a *Killebrew* agreement in this matter.  We have asked the Court to fashion a sentence between 8 and 15 years.  I ask the Court to honor that agreement, to come up with a sentence within those boundaries as set out and agreed upon by the parties.
>
> On behalf of the family, I would ask the Court to honor their request that the sentence be on the upper end of those guidelines.

(*Id.*, PageID.58.)  Petitioner's counsel, on the other hand, argued: "We have discussed the guidelines and of course, my client would like you to consider the low end of the guidelines." (*Id.*, PageID.63.)  Against that backdrop, the trial court announced Petitioner's sentence:

> All I can do is impose a sanction within the limits provided by law and by the agreement that was reached by the parties.  When I take everything into consideration into what a reasonable sentence is under these circumstances, I come to the conclusion that it [is] your sentence, Mr. Thomas, that you serve not longer than 50 years with the Michigan Department of Corrections and not less than 15 years.

(*Id.*, PageID.69.)

A few months later, Petitioner filed a motion for resentencing or to withdraw his plea.  He contended that the prosecutor had, by asking the court to impose sentence at the higher end of the agreed range, breached his agreement to remain silent and make no recommendation at sentencing.  Petitioner alternatively claimed that his plea was unknowing and involuntary because the negotiations led Petitioner to believe that he would be sentenced to no more than 8 years.  (Mot. Hr'g Tr., ECF No. 1-4, PageID.78-79) ("My client at this point feels . . . that . . . had he known that your Honor was going to give him something above the 8, he wouldn't have accepted the deal and he would have went to trial.").

4

At the plea withdrawal hearing, Petitioner's counsel's argument shifted from claiming a promise by the prosecutor to remain silent at sentencing, to an expectation that the victim's family would:

> And I believe if I would have told my client that the victim's family was going to come in here and ask you for the max, we wouldn't have accepted the deal but that's not what we were told and then they did it. And you did give them deference. And I don't know if they influenced you or not, your Honor, if that's the reason you gave him the maximum amount of time or if you would have given him life had the had the ability to.

(*Id*., PageID.79-80.) Nonetheless, at the October 17, 2016 hearing, in response to the court's questioning, counsel acknowledged that the negotiations were not one number, but a range of years: 8 to 15 years. (*Id*., PageID.80.) Counsel also acknowledged that he was aware of no authority that would permit the prosecutor to bargain away the victim's family's right to speak at sentencing and request whatever sentence they believed to be appropriate. (*Id*.) The prosecutor argued that the range to which the parties agreed was the product of each party giving up something—the highest and lowest extremes were taken off the table. (*Id*., PageID.81-82.)

The trial court played back the entire plea hearing during the motion hearing. The trial court denied Petitioner's motions because the court concluded that Petitioner's claim that the prosecutor had agreed to an 8-year minimum sentence or to remain silent at sentencing was unfounded. The court found that Petitioner received exactly what he bargained for and that his plea was voluntarily, knowingly, and intelligently made. (Mot. Hr'g Tr., ECF No. 97-98.) The court specifically rejected Petitioner's contention that the prosecutor agreed to remain silent at sentencing when he stated at the plea that he would leave the imposition of a minimum sentence within the agreed range to the court's discretion. The court noted the local practice was to specifically agree to "no rec" if the prosecutor intended to ***not*** make a sentence recommendation.

5

(*Id.*, PageID.98-99.) The court believed that the agreement permitted the parties on both sides to advocate for a number between 8 and 15. (*Id.*, PageID.99.) That is precisely what happened.

Petitioner sought to appeal the trial court's order denying his motion. After a couple of unsuccessful attempts to file an appeal as of right, Petitioner, with the assistance of counsel, filed an application for leave to appeal in the Michigan Court of Appeals raising the same issue he raises in this petition. The court of appeals denied leave "for lack of merit in the grounds presented[,]" by order entered August 21, 2017. (Mich. Ct. App. Order, ECF No. 1, PageID.18.) Petitioner, again with the assistance of counsel, then sought leave to appeal in the Michigan Supreme Court. That court denied leave by order entered April 3, 2018. (Mich. Order, ECF No. 1, PageID.19.)

On June 28, 2019, Petitioner, with the assistance of counsel, timely filed his habeas corpus petition raising one ground for relief: Petitioner's plea was not voluntary or knowing when the People violated the sentence agreement to remain silent at sentencing. (Pet., ECF No. 1, PageID.5.)

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words,

7

"[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Breach of the Plea Agreement

The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id.* at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

The Sixth Circuit has held:

> "Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law." *United States v. Robison*, 924

> F.2d 612, 613 (6th Cir. 1991). One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement. *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990) (citing *United States v. Kamer*, 781 F.2d 1380, 1387 (9th Cir. 1986)).

*Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

The trial court found that the plea term asserted by Petitioner—that the prosecutor agreed to remain silent with respect to a sentence recommendation—was not part of the plea agreement. That finding is reasonable on the record. Moreover, that finding is presumed to be correct and Petitioner must overcome that presumption with clear and convincing evidence. He has failed to do so. He offers no evidence other than his unilateral subjective expectation to support his claim that the prosecutor agreed to remain silent. Accordingly, Petitioner is not entitled to habeas relief on his claim that the prosecutor breached the plea agreement.

## IV. Knowing and Voluntary Plea

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner claims that his plea is invalid because it was not knowingly and voluntarily entered into. *See Mabry*, 467 U.S. at 508 ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a

9

defendant's plea is valid look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

The trial court considered the validity of Petitioner's plea under state law, specifically Mich. Ct. R. 6.310. Nonetheless, the court's analysis looked to the same issues that ensure a plea comports with the requirements of due process: was the plea voluntary and knowing. (Mot. Hr'g Tr., ECF No. 1-4, PageID.95-96.) The trial court concluded:

> that the documentation, the transcripts and the video support that the Defendant clearly understood that he would be receiving a sentence somewhere between the minimum of 8 and the maximum of 15 years and it could be any number between those, including those two numbers, and this was again verified at the time of the plea . . . .

10

> Again, the People and the Defendant left it in the Court's discretion to determine what sentence was appropriate. The recommendation that was made by the People and by the victim's family at the time of sentencing did nothing to remove the actual selection of an appropriate minimum sentence from the Court's discretion. Again the sentence here that the Defendant received is what he bargained for.
>
> Accordingly, the Defendant's motion to withdraw his plea is denied. It was voluntarily, knowingly and intelligently made.

(*Id.*, PageID.97-98.)

The trial judge's factual determinations are well-supported by the plea hearing transcript. The court carefully reviewed the terms of the agreement—terms that included a minimum sentence of 8 to 15 years in the court's discretion but did not include any term suggesting that the prosecutor or the victim's family would forego a recommendation at sentencing or that the minimum sentence would not exceed 8 years—and Petitioner agreed that those were the terms and that no other promises had been made.

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that the prosecutor offered him a specific sentence in exchange for a plea of guilty. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement if it consists of "secret terms known only to the parties." *Id.*

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and

intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Petitioner offers no evidence to overcome that presumption, much less clear and convincing evidence, other than his apparent subjective misunderstanding. Such subjective misunderstandings have been routinely rejected as grounds to invalidate a guilty plea. *See Marks v. Davis,* 504 F. App'x 383, 385-86 (6th Cir. 2012) (based on plea colloquy, court rejected petitioner's claim of misunderstanding that the calculated minimum range under Michigan's sentencing guidelines was actually the minimum and maximum sentence); *McAdoo*, 365 F.3d at 487 (court rejected petitioner's claim that subjective misunderstanding regarding meaning of life sentence versus parolable life sentence rendered plea involuntary); *Nichols v. Perini*, 818 F.2d 554, 558 (6th Cir. 1987) (court held that where sentence was longer than that expected based on petitioner's subjective belief regarding likely sentence, even when that belief is prompted by counsel's "guesstimate," there was no procedural or constitutional defect); *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir. 1972) ("[A] defendant's mistaken subjective impressions gained from conferences with his legal counsel, in the absence of substantial objective

12

proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea.").

Accordingly, the state court's rejection of Petitioner's subjective misunderstanding as a ground to invalidate his plea, and the court's reliance on Petitioner's statements during the plea colloquy to support the validity of the plea, are neither contrary to, nor an unreasonable application of, clearly established federal law. Moreover, the state court's determinations of fact in support of its conclusions are not unreasonable on the relevant record.[1] Therefore, Petitioner is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where

---

[1] Although the state court record is not complete, Petitioner has attached to his petition all of the documents necessary to a determination of the validity of his plea.

13

court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated:  August 13, 2019              /s/ Janet T. Neff
                                     Janet T. Neff
                                     United States District Judge